Megan O'Neill (SBN 220147)
moneill@dtolaw.com
DTO LAW
601 S. Figueroa Street, Suite 2130
Los Angeles, CA 90017
Telephone: (213) 335-6999
Facsimile: (213) 335-7802

Erik P. Mortensen (SBN 326610)
emortensen@dtolaw.com
Andrea Maddox (SBN 347935)
amaddox@dtolaw.com
DTO LAW
2400 Broadway, Suite 200
Redwood City, CA 94063
Telephone: (415) 630-4100
Facsimile: (415) 630-4105

Attorneys for Defendant
ONNIT LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH MARTIN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ONNIT LABS, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.: 2:23-cv-03737-FWS-KES<br>Hon. Fred W. Slaughter<br><br>**DEFENDANT ONNIT LABS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: Sept. 7, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 10D |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 5

A. Plaintiff Fails to Plausibly Allege Specific Facts Pointing to Any Actual Falsehood on the Product's Label. .......... 5

1. Study 1 did not examine the Product's effectiveness on memory and focus, and, if anything, supports the Product's representations. .......... 6

2. Studies 2, 3, 4, and 5 are irrelevant: they studied only one or two ingredients in the Product, not its unique mix, and did not study whether the ingredient had any effect on memory and focus in healthy individuals. .......... 6

B. Plaintiff's Prayer for Damages Fails. .......... 8

1. Plaintiff did not comply with the CLRA's pre-suit notice requirement. .......... 8

2. Plaintiff does not plausibly plead entitlement to punitive damages. .......... 10

C. This Court Should Dismiss the Amended Complaint Without Leave to Further Amend. .......... 11

V. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aloudi v. Intramedic Research Grp.*, 729 Fed. App'x 514 (9th Cir. 2017) .......... 8

*Andrade v. Am. First Fin., Inc.*, 2023 WL 4238480 (N.D. Cal. June 27, 2023) .......... 9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Brennan v. Johnson & Johnson*, 2022 WL 17219513 (C.D. Cal. Nov. 18, 2022) .......... 10, 11

*Brousseau v. Jarrett*, 73 Cal. App. 3d 864 (1977) .......... 10

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011) .......... 11

*Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172 (S.D. Cal. Oct. 19, 2021) .......... 9

*Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) .......... 6, 7, 8

*Grimberg v. United Airlines, Inc.*, 2023 WL 2628708 (C.D. Cal. Jan. 10, 2023) .......... 11

*Hin v. U.S. Dept. of Justice U.S. Marshalls Serv.*, 2022 WL 705617 (E.D. Cal. Mar. 9, 2022) .......... 10

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) .......... 5

*Lytle v. Nutramax Labs., Inc.*, 2019 WL 8060070 (C.D. Cal. Sept. 26, 2019) .......... 5

*McCrary v. Elations Co., LLC*, 2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) ..... 7

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms, Inc.*, 107 Cal. App. 4th 1336 (2003) ..... 5

*Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30 (1975) ..... 9

*Reed v. Nat'l Football League*, 2015 WL 13344625 (C.D. Cal. Dec. 18, 2015) ..... 11

*Romero v. Flowers Bakeries, LLC*, 2015 WL 2125004 (N.D. Cal. May 6, 2015) ..... 10

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ..... 5

*Tubbs v. AdvoCare Int'l, L.P.*, 785 F. App'x 396 (9th Cir. 2019) ..... 7

*Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) ..... 5

*Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ..... 9

*Vigil v. Gen. Nutrition Corp.*, 2015 WL 8056178 (S.D. Cal. Dec. 4, 2015) ..... 5, 6

*Wanxia Liao v. United States*, 2012 WL 3945772 (N.D. Cal. Apr. 16, 2012) ..... 12

*Wilson v. S. Cal. Edison, Co.*, 234 Cal. App. 4th 123 (2015) ..... 11

**Statutes**

Cal. Civ. Code § 1750 ..... 4

Cal. Civ. Code § 1770 ..... *passim*

Cal. Civ. Code § 1782(a) ..... 8, 9, 10

Cal. Civ. Code § 3294 ..... 10, 11

**Other Authorities**

Fed. R. Civ. P. 8 .......... 4

Fed. R. Civ. P. 9(b) .......... 5

Fed. R. Civ. P. 12(b)(6) .......... 4

# I. INTRODUCTION

Defendant Onnit Labs, Inc. manufactures the dietary supplement Alpha Brain (the "Product"). As explained on the label, the Product "helps support memory & focus." Plaintiff Ruth Martin alleges these representations are false in violation of the Consumer Legal Remedies Act ("CLRA"), yet her complaint contains no plausible evidence of falsity, instead simply challenging the Product's substantiation. This falls far short of the pleading standard.

Because California law has long prohibited "lack-of-substantiation" actions, Plaintiff has the burden of pointing to specific evidence demonstrating that the Product's claims are actually false. Plaintiff's initial Class Action Complaint did not meet this standard because Plaintiff alleged nothing more than her vague, anecdotal experience with the Product and referenced unidentified "scientific studies." While Plaintiffs' Amended Class Action Complaint finally identifies those studies, even a cursory review reveals they do not actually provide any evidence the Product's representations are false. Those studies involved different products and representations than those at issue in this case, and California courts routinely dismiss false advertising cases predicated on similarly inapposite studies. This Court should do the same.

In addition to the Amended Complaint's glaring substantive shortcomings, Plaintiff's CLRA claim for damages fails because Plaintiff did not comply with the pre-suit notice requirement. Instead, Plaintiff's counsel sent a generic letter to Onnit that did not even name "the consumer" it was sent on behalf of, apparently intending to use it as a placeholder for future lawsuits. Plaintiff's counsel then filed a lawsuit on behalf of a ***different*** plaintiff (which was later dismissed). Apparently believing that original CLRA letter could be used again and again, Plaintiff's counsel now attempts to rely on it in this lawsuit. The Court should not permit such blatant violations of the statutory requirements here.

Finally, Plaintiff has not pleaded a basis to seek punitive damages.

For the foregoing reasons, the Court should dismiss Plaintiff's Amended Complaint without leave to further amend.

## II. BACKGROUND

Defendant Onnit Labs, Inc. manufactures the dietary supplement Alpha Brain (the "Product"). *See* Am. Compl. § 1, ECF No. 17. The Product contains many ingredients, including L-Tyrosine, L-Theanine, Phosphatdylserine ("PS"), Cat's Claw Extract, L-Alpha glycerylphosphorylcholine ("GPC"), Bacopa Extract, L-Leucine, and Pterostilbene. *Id.* ¶ 8. The Product's label states it "helps support memory & focus," and Onnit's website states the Product "supports memory, focus, and cognitive processing speed." *Id.* ¶¶ 8-9.

Plaintiff believes the Product's claims are false. According to Plaintiff, "[n]umerous scientific studies conclusively prove that the ingredients in the Product . . . do not and cannot [sic] the promised benefits." *Id.* ¶ 10. She identifies five studies. *See id.* ¶¶ 11-17. Critically, however, four of them did not involve the Product or the same unique formulation of ingredients in the Product, and none of them tested the representations at issue here: whether the Product "helps support memory & focus."

More specifically, the first study Plaintiff cites measured the impact of Alpha Brain on the marksmanship of U.S. active-duty soldiers, with a focus on accuracy and target acquisition time. *See* Am. Compl., Ex. 1 (Nicholas Barringer, *et al.*, *Impact of a purported nootropic supplementation on measures of mood, stress, and marksmanship performance in U.S. active duty soldiers*, J. of Int'l Soc'y of Sports Nutrition (2018)) ("Study 1"). The study concluded there was no statistically significant effect on marksmanship performance. *See id.* at 1. Notably, however, the Product does not claim to improve marksmanship. This study thus has no relevance here.

The second study Plaintiff cites reviewed other studies involving cognitive interventions on older persons to delay onset of dementia. *See* Am. Compl., Ex. 2

(Yindee van Os, *et al.*, *Cognitive Interventions in Older Persons: Do They Change the Functioning of the Brain?*, BioMed Res. Int'l (2015)) ("Study 2"). The Amended Complaint focuses on only one of the nineteen articles discussed in Study 2 (the "Heiss Study"), which concerned Phosphatdylserine ("PS") interventions on people with Alzheimer's disease. *See* Am. Compl. ¶ 13; Study 2, at 10. Plaintiff alleges the Heiss Study found the positive effects of PS did not last through the end of the six-month intervention. *See* Am. Compl. ¶ 13. Notably, however, the Product does not claim to treat Alzheimer's.[1] The Product also contains many more ingredients than PS. *See id.* ¶ 8.

The third study Plaintiff cites surveyed other studies of eight alternative therapies commonly used by people with Alzheimer's disease. *See* Am. Compl., Ex. 3 (Brendan J. Kelley, *et al.*, *Alternative Medicine and Alzheimer's Disease*, 14 Neurologist 299 (Sept. 2008)) ("Study 3"). It concluded none of the alternatives, including PS, showed a clear clinical benefit. *See id.* at 1, 9. Again, however, the Product does not claim to treat Alzheimer's and contains many more ingredients than PS. *See* Am. Compl. ¶ 8.

The fourth study Plaintiff cites assessed the effect of choline and L-Alpha glycerylphosphorylcholine ("GPC") on the modulation of inflammatory processes in rat brains. *See* Am. Compl., Ex. 4 (Seyed Khosrow Tayebati, *et al.*, *Choline and Choline alphoscerate Do Not Modulate Inflammatory Processes in the Rat Brain*, 9 Nutrients 1084 (2017)) ("Study 4"). It concluded that neither choline nor GPC affected the expression of the inflammatory markers. *See id.* at 1. The Product,

---

[1] To the contrary, as Plaintiff neglects to mention, the Product expressly states, as required by law, that it does ***not*** treat disease. *See* Request for Judicial Notice ("RJN"), Ex. A ("("THIS PRODUCT IS NOT INTENDED TO DIAGNOSE, TREAT, CURE, OR PREVENT ANY DISEASE."); https://www.onnit.com/alphabrain/ (cited in Am. Compl. ¶ 9) (same).

however, does not claim to modulate inflammatory processes in either rat or human brains and includes more ingredients than choline and GPC. *See* Am. Compl. ¶ 8.

The fifth and final study Plaintiff cites examined cognitive and physical changes in "elite League of Legends e-sports players" who consumed an energy drink containing PS and GPC. *See* Am. Compl., Ex. 5 (Casey J. Thomas, *et al.*, *The Effects of Energy Drink Consumption on Cognitive and Physical Performance in Elite League of Legends Players*, 7 Sports 196 (2019)) ("Study 5"). It found no mental or physical improvement in the performance of participants who consumed the energy drink. *See id.*, at 1. The Product, however, is not an energy drink and does not claim to improve video game performance. It also includes more ingredients than PS and GPC. *See* Am. Compl. ¶ 8.

Notwithstanding her failure to point to any study testing the actual representations at issue here—whether the Product "helps support memory & focus"—Plaintiff brings a putative nationwide class action for violations of the CLRA, Cal. Civ. Code § 1750 *et seq*. *See* Am. Compl. ¶¶ 20, 15-19.[2] She seeks actual, statutory, and punitive damages, as well as attorneys' fees and costs. *See id.* at Prayer for Relief.

## III. LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)). Federal Rule of Civil Procedure 8 requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although this Court must accept factual allegations in the Complaint as true, it

[2] After Paragraph 20, the Amended Complaint restarts at Paragraph 15.

need not credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Claims for fraud, however, are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means a complaint must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citations omitted).

## IV. ARGUMENT

### A. Plaintiff Fails to Plausibly Allege Specific Facts Pointing to Any Actual Falsehood on the Product's Label.

To state a claim under California's consumer protection statutes based on actual falsity, a plaintiff must "allege ***specific facts*** pointing to actual falsehood" of the statements. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1097 (9th Cir. 2017)); *see also Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms, Inc.*, 107 Cal. App. 4th 1336 (2003). Where a plaintiff purports to establish falsity through a scientific study, "[the] study's conclusion must directly address the misrepresentation it is cited to debunk." *Lytle v. Nutramax Labs., Inc.*, 2019 WL 8060070, at *5 (C.D. Cal. Sept. 26, 2019); *see also Vigil v. Gen. Nutrition Corp.*, 2015 WL 8056178, at *6 (S.D. Cal. Dec. 4, 2015) ("When it comes to the plausibility analysis, the essential inquiry depends upon a comparison of the match between the representations at issue and the evidence that allegedly debunks them.") (internal quotations and citation omitted).

Here, as detailed above, none of the studies Plaintiff relies on points to any actual falsehood on the Product's label. Most do not involve the Product at issue, and none involve the representations at issue.

1. *Study 1 did not examine the Product's effectiveness on memory and focus, and, if anything, supports the Product's representations.*

Study 1 measured the impact of Alpha Brain on the marksmanship of U.S. active-duty soldiers and concluded there was no statistically significant effects on marksmanship performance. *See id.* at 1. Plainly, there is a mismatch between the focus of Study 1 and whether the Product "supports memory, focus, and cognitive processing speed." Marksmanship is not the same as (or even relevant to) general cognitive performance, and this mismatch is fatal to Plaintiffs' allegations. *See Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012) ("When false advertising claims do survive a motion to dismiss, by contrast, there is not this kind of mismatch between the representations at issue and the evidence that allegedly debunks them.").

Moreover, Plaintiff ignores references in Study 1 to two other studies finding that Alpha Brain ***does*** provide the purported benefits. The authors note "two other research studies examining Alpha Brain efficacy," one that "reported a significant improvement in verbal memory in healthy young adults after a 6 weeks supplementation at dose consistent with the current study," and another that observed "a benefit of [Alpha Brain] on Event-Related Potential and Electroencephalograph measure of cognitive function after 8 weeks of supplementation." Study 1, at 4. Indeed, in contrast with Study 1, those other studies show a benefit in ***memory*** and ***cognitive function***, not marksmanship, and so ***are*** relevant to and supportive of the Product's representations.

2. *Studies 2, 3, 4, and 5 are irrelevant: they studied only one or two ingredients in the Product, not its unique mix, and did not study whether the ingredient had any effect on memory and focus in healthy individuals.*

Studies 2 and 3 investigated PS interventions on individuals with Alzheimer's disease. *See* Study 2, at 10; Study 3, at 9. Study 4 assessed the effect

of choline and GPC on the modulation of inflammatory processes in rat brains. *See* Study 4, at 2. And Study 5 tested the impact of an energy drink containing PS and GPC on "elite League of Legends e-sports players." Study 5, at 1.

As with Study 1, these studies all fail to address the representations at issue. Onnit makes no claim that the Product prevents or treats Alzheimer's disease, modulates inflammatory processes, or improves video game performance. Rather, it claims to enhance cognitive function more generally. Plaintiff cannot use studies about narrow circumstances and outcomes to bootstrap allegations regarding the Product's more general representations. *See Tubbs v. AdvoCare Int'l, L.P.*, 785 F. App'x 396, 397 (9th Cir. 2019) (finding that a study on the effect of a product on sprinting times of college athletes did not implicate the product's challenged claims that it would "sharpen mental focus" and provide "long lasting energy"); *Eckler*, 2012 WL 5382218, at *7 ("The studies allegedly show that glucosamine doesn't alleviate the symptoms of osteoarthritis in the hip and knee. That is a very particular showing with respect to a degenerative joint disease, and in the Court's judgment it doesn't address the far more general claim—which *is* made by the Equate representations—that glucosamine is good for the body's joints."); *McCrary v. Elations Co., LLC*, 2013 WL 6402217, at *3-4 (C.D. Cal. Apr. 24, 2013) (same).[3]

---

[3] To be sure, Plaintiff notes Study 3 involved "poorly defined dementia patients" and "loosely diagnosed 'AD' patients," and so were not individuals clearly diagnosed with Alzheimer's disease. Am. Compl. ¶ 15. But Plaintiffs overlook that the Product does not claim to treat dementia either. And even if some individuals in the study did not have Alzheimer's disease, the study plainly focused on Alzheimer's disease. After all, the name of Study 3 is "Alternative Medicine and ***Alzheimer's Disease***." Study 3, at 1 (emphasis added).

More fundamentally, Studies 2, 3, 4, and 5 did not test the Product but rather only one or two ingredients out of the 12 active ingredients in the Product. "[I]t is th[e] overall formulation that's behind the representations at issue." *Eckler*, 2012 WL 5382218, at *6. A plaintiff cannot support a claim of false advertising by citing to studies that involve only certain of the key ingredients contained in the challenged product. *See id.*; *Aloudi v. Intramedic Research Grp.*, 729 Fed. App'x 514, 516 (9th Cir. 2017) (affirming dismissal in part because "[n]one of these allegations involves scientific testing of the actual JavaSLIM product or a product with the same active ingredients as JavaSLIM in a dose similar to that in JavaSLIM").

Finally, as with Study 1, Studies 4 and 5 actually bolster the Product's representations, if anything. Study 4 observed that other "studies have demonstrated that GPC facilitates learning and memory, improves brain-transduction mechanisms, and decreases age-dependent structural changes occurring in the rat frontal cortex and hippocampus." Study 4, at 2. Therefore, Study 4 is consistent with the Product's representation that it supports memory. Meanwhile, Study 5 found the energy drink containing PS and GPC improved working memory. *See* Study 5, at 7. Therefore, Study 5 is also consistent with the Product's representation that it supports memory.

In sum, Plaintiffs do not cite a single study demonstrating the falsity of the Product's representation that it helps support memory and focus. To the contrary, several studies affirm the Product's representations.

### B. Plaintiff's Prayer for Damages Fails.

#### 1. *Plaintiff did not comply with the CLRA's pre-suit notice requirement.*

Prior to filing a CLRA claim for damages, a plaintiff must provide notice to the defendant of the particular alleged violations, by certified or registered mail, at least 30 days before filing the action. *See* Cal. Civ. Code § 1782(a). This statutory

notice requirement is clear and unambiguous. "It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear there can be no room for interpretation, and effect must be given to its plain meaning." *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40 (1975) (discussing Cal. Civ. Code § 1782(a)). The CLRA notice Plaintiffs attach to the Amended Complaint, purportedly sent on December 14, 2022, *see* Am. Compl., Ex. 6 ("Notice"), suffers from several fatal flaws.

***First***, the Notice does not identify any consumer. *See* Cal. Civ. Code § 1782(a) (requiring "***the*** consumer" to send notice) (emphasis added). It simply refers to counsel's "client." Notice 1. This ambiguity is particularly problematic in this case because on March 15, 2023—only three months after the purported Notice was sent—Plaintiff's counsel filed a lawsuit against Onnit on behalf of an individual named Geneva Gonzalez. *See* Request for Judicial Notice, Ex. A. Shortly thereafter, Plaintiff's counsel dismissed the case. *See id.*, Ex. B. It appears Plaintiff's counsel is improperly attempting to use that "anonymous notice" for multiple plaintiffs—first for Gonzalez, and now for Martin. The Court should not endorse such blatant flouting of the CLRA's notice requirement. *See Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *19 (N.D. Cal. Mar. 14, 2014) (finding notice from another case did not suffice because "[t]he statute explicitly states that '[t]hirty days or more prior to *the* commencement of an action for damages,' notice shall be given'" (quoting Cal. Civ. Code § 1782(a))).

***Second***, the Notice fails to identify any specific violations of the CLRA, citing only the CLRA generally and not the subsections of Civil Code section 1770 that Onnit purportedly violated. *See* Notice 1; Cal. Civ. Code. § 1782(a)(1) (requiring notice of "***particular alleged violations*** of Section 1770") (emphasis added); *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1201 (S.D. Cal. 2021) (dismissing CLRA cause of action for damages in part because plaintiffs' notice failed to assert which provision of Section 1770 was being violated);

*Romero v. Flowers Bakeries, LLC*, 2015 WL 2125004, at *8 (N.D. Cal. May 6, 2015) ("The Court agrees with Defendant that Plaintiff's CLRA notice letter was deficient. As with her pleadings, Plaintiff's notice letter merely sets forth her substantive allegations and invites Defendant to figure out which provisions of the CLRA are applicable. That does not facilitate pre-complaint settlement, nor does it serve to place Defendant on notice of what is required to redress Plaintiff's complaint.").[4]

*2. Plaintiff does not plausibly plead entitlement to punitive damages.*

A plaintiff may recover punitive damages when the "the defendant has been guilty of oppression, fraud, or malice[.]" Cal. Civ. Code § 3294. As this Court has recognized, however, "'[c]onclusory characterization of defendant's conduct as intentional, willful, and fraudulent is a patently insufficient statement of "oppression, fraud, or malice" within the meaning of section 3294.'" *Brennan v. Johnson & Johnson*, 2022 WL 17219513, at *16 (C.D. Cal. Nov. 18, 2022) (Slaughter, J.) (quoting *Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977)).

---

[4] In addition, Plaintiff did not strictly follow the CLRA's notice procedure. The CLRA plainly requires notice to "be sent by ***certified or registered mail, return receipt requested***[.]" Cal. Civ. Code § 1782(a)(2) (emphasis added). Plaintiff, however, sent the notice via Federal Express, which provides an independent basis to dismiss her damages claim. *See* Am. Compl. ¶ 19; Notice 1; *cf. Hin v. U.S. Dept. of Justice U.S. Marshalls Serv.*, 2022 WL 705617, at *7-8 (E.D. Cal. Mar. 9, 2022) (distinguishing FedEx from certified or registered mail); *Andrade v. Am. First Fin., Inc.*, 2023 WL 4238480, at *3-4 (N.D. Cal. June 27, 2023) (finding plaintiff failed to meet CLRA notice requirements because she could not produce the USPS "green card" confirming proof of delivery, even though she had receipts proving mailing).

Indeed, "the majority of courts [have held] that allegations supporting a claim of punitive damages must be alleged with sufficient specificity to satisfy the *Iqbal*/*Twombly* standards, as there simply is no principled reason to depart with Supreme Court precedent on the issue." *Grimberg v. United Airlines, Inc.*, 2023 WL 2628708, at *3 (C.D. Cal. Jan. 10, 2023) (collecting authorities).

As in *Grimberg*, "the Complaint does not even plead conclusory allegations – let alone specific allegations – of the basic elements required to establish an entitlement to punitive damages under California law." *Id.* at *4. "[N]owhere in the Complaint is there any allegation that [Onnit] . . . acted with 'malice, oppression, or fraud' as required by section 3294(a)." *Id.*

Furthermore, because Onnit is a corporation, any award of punitive damages "must rest on the malice of the corporation's employees." *Brennan*, 2022 WL 17219513, at *16 (quoting *Wilson v. S. Cal. Edison, Co.*, 234 Cal. App. 4th 123, 164 (2015)). That is, "the oppression, fraud, or malice must [have been] perpetrated, authorized, or knowingly ratified by an officer, director, or managing agent of the corporation." *Id.* (quoting *Wilson*, 234 Cal. App. 4th at 164). The Amended Complaint here does not contain any such allegations.

Having failed to allege Onnit—much less any officer, director, or managing agent of Onnit—committed any act of oppression, fraud, or malice, Plaintiff's prayer for punitive damages fails.

### C. This Court Should Dismiss the Amended Complaint Without Leave to Further Amend.

"While leave to amend should generally be liberally granted, courts have the discretion to deny leave to amend for futility of amendment." *Reed v. Nat'l Football League*, 2015 WL 13344625, at *3 (C.D. Cal. Dec. 18, 2015) (citation omitted), *aff'd*, 683 F. App'x 619 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1610 (2018). "Further, the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso*

*v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotations omitted). Here, any amendment would be futile. Plaintiff attempted to cure deficiencies identified in Defendant's initial Motion to Dismiss, but the Amended Complaint still falls far short. If Plaintiff had affirmative evidence that the Product did not provide the advertised benefits, surely she would have put it forth already instead of introducing studies about the Product's effect on marksmanship, among other things.

Because amendment would be futile, the Court should dismiss the Amended Complaint without leave to further amend. *See, e.g.*, *Wanxia Liao v. United States*, 2012 WL 3945772, at *6 (N.D. Cal. Apr. 16, 2012) (finding leave to amend would be futile because plaintiff already amended and still made insufficient allegations).

## V. CONCLUSION

For the foregoing reasons, this Court should dismiss the Amended Complaint without leave to further amend.

Respectfully submitted,

Dated: July 28, 2023

DTO LAW

By: */s/ Megan O'Neill*
Megan O'Neill

Attorneys for Defendant
ONNIT LABS, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Onnit Labs, Inc., certifies that this Memorandum does not exceed 25 pages and contains 3,592 words, in compliance with the page limit of Rule VIII(c) of the Civil Standing Order (ECF No. 12) and the word limit of Local Rule 11-6.1.

Dated: July 28, 2023

*/s/ Megan O'Neill*
Megan O'Neill