Megan O'Neill (SBN 220147)
  moneill@dtolaw.com
DTO LAW
601 S. Figueroa Street, Suite 2130
Los Angeles, CA 90017
Telephone: (213) 335-6999
Facsimile: (213) 335-7802

Erik P. Mortensen (SBN 326610)
  emortensen@dtolaw.com
Andrea Maddox (SBN 347935)
  amaddox@dtolaw.com
DTO LAW
2400 Broadway, Suite 200
Redwood City, CA 94063
Telephone: (415) 630-4100
Facsimile: (415) 630-4105

Attorneys for Defendant
ONNIT LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH MARTIN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ONNIT LABS, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.: 2:23-cv-03737-FWS-KES<br>Hon. Fred W. Slaughter<br><br>**DEFENDANT ONNIT LABS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:  September 7, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 10D |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 1

    A. Plaintiff Fails to Show Any of the Cited Studies Is a "Match" to Her Allegations: None Relates to Anything the Product Promised .................................................................................................. 1

        1. Plaintiff cannot refute Study 1 is irrelevant here because the Product does not promise to improve marksmanship. ...... 2

        2. Plaintiff cannot refute that Studies 2, 3, 4, and 5 do not concern the challenged representation or the Product's unique ingredient blend. .......................................................... 3

        3. Plaintiff presents only inapposite authority and thus fails to dispute she is pursuing an impermissible lack-of-substantiation theory. ............................................................... 5

    B. Plaintiff Attempts to Rewrite the CLRA but Cannot Escape the Fact She Failed to Comply with Clear Statutory Requirements ........ 7

        1. Plaintiff's counsel cannot "recycle" CLRA letters .................. 7

        2. Plaintiff cannot skirt the CLRA's plain requirements that subsections be identified and the notice be sent via certified or registered mail ......................................................... 8

    C. Plaintiff Does Not Plausibly Plead Entitlement to Putative Damages .................................................................................................. 10

    D. The Court Should Dismiss Without Leave to Amend ...................... 10

III. CONCLUSION ................................................................................................ 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Cafasso v. Gen. Dynamics C4 Sys.*,
　637 F.3d 1047 (9th Cir. 2011) ............................................................................... 10

*Colucci v. ZonePerfect Nutrition Co.*,
　2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ....................................................... 9

*Eckler v. Wal-Mart Stores, Inc.*,
　2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ................................................ 1, 3, 4

*Fidelity Sound System, Inc. v. Am. Bonding Co.*,
　85 Cal. App. 3d Supp. 13 (1978) ........................................................................... 9

*Franz v. Beiersdorf, Inc.*,
　2015 WL 4659104 (S.D. Cal. Aug. 5, 2015) ......................................................... 5

*Freeman v. Indochino Apparel, Inc.*,
　443 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................................. 9

*Gallagher v. Bayer AG*,
　2015 WL 1056480 (N.D. Cal. Mar. 10, 2015) ....................................................... 6

*Grimberg v. United Airlines, Inc.*,
　2023 WL 2628708 (C.D. Cal. Jan. 10, 2023) ....................................................... 10

*Hadley v. Kellogg Sales Co.*,
　273 F. Supp. 3d 1052 (N.D. Cal. 2017) ................................................................. 6

*Johnson-Jack v. Health-Ade LLC*,
　587 F. Supp. 3d 957 (N.D. Cal. 2022) ................................................................... 6

*Jones v. Porsche Cars N. Am., Inc.*,
　2015 WL 11995257 (C.D. Cal. Oct. 15, 2015) ...................................................... 9

*Kagan v. Gibraltar Sav. & Loan Assn.*,
　35 Cal. 3d 582 (1984) ............................................................................................ 8

*Krommenhock v. Post Foods, LLC*,
　225 F. Supp. 3d 938 (N.D. Cal. 2017) ................................................................... 6

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) .................................................................................. 7

*Lafferty v. Wells Fargo Bank*,
    213 Cal. App. 4th 545 (2013) ................................................................................. 9

*Lytle v. Nutramax*,
    2019 WL 8060070 (C.D. Cal. Sept. 26, 2019) ....................................................... 4

*McCrary v. Elations Co., LLC*,
    2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) ................................................... 5, 6

*Myers v. Starbucks Corp.*,
    2020 WL 13302437 (C.D. Cal. July 29, 2020) ...................................................... 7

*Outboard Marine Corp. v. Superior Court*,
    52 Cal. App. 3d 30 (1975) ...................................................................................... 8

*Quinn v. Walgreen Co.*,
    958 F. Supp (S.D.N.Y. 2013) ................................................................................. 6

*Reed v. Nat'l Football League*,
    2015 WL 13344625 (C.D. Cal. Dec. 18, 2015) ................................................... 10

*Shein v. Canon U.S.A., Inc.*,
    2009 WL 3109721 (C.D. Cal. Sept. 22, 2009) ...................................................... 9

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ............................................................................... 9

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007) ................................................................... 9

*Tubbs v. AdvoCare Int'l, L.P.*,
    785 F. App'x 396 (9th Cir. 2019) ........................................................................... 2

*Vigil v. Gen. Nutrition Corp.*,
    2015 WL 8056178 (S.D. Cal. Dec. 4, 2015) ............................................. 1, 4, 6, 7

*Vizcarra v. Unilever U.S., Inc.*,
    2020 WL 4016810 (N.D. Cal. July 16, 2020) ........................................................ 8

**Statutes**

Cal. Civ. Code § 1770...................................................................................................... 9

Cal. Civ. Code § 1782................................................................................................... 8, 9

Cal. Civ. Code § 3294.................................................................................................... 10

## I. INTRODUCTION

That Plaintiff argues a study of active-duty **soldiers' marksmanship** is plausible evidence Alpha Brain does not "help[] support memory & focus" in the general population demonstrates the weakness of her suit.

Plaintiff's arguments about her other four studies fare no better. *First*, none of them relates to the challenged representation: "helps support memory & focus," instead relating to the effect on video gaming, Alzheimer's (a disease Alpha Brain does not purport to treat), or inflammation. *Second*, none of the four studies examined the actual Product, instead looking at just one or two of Alpha Brain's many ingredients. Because there is a "mismatch" between Plaintiff's studies, on the one hand, and Alpha Brain and the "helps support memory & focus" claim, on the other, Plaintiff fails to state a plausible claim. *See Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012) ("When false advertising claims do survive a motion to dismiss, by contrast, there is not this kind of mismatch between the representations at issue and the evidence that allegedly debunks them.").

Plaintiff also fails to rebut that (1) the pre-suit CLRA notice her counsel sent was defective; and (2) she has not adequately pleaded punitive damages.

Because Plaintiff already amended once in response to a motion to dismiss and does not indicate she can "cure" the fundamental defect in her pleading, any amendment would be futile, so the Court should dismiss without leave to amend.

## II. ARGUMENT

### A. Plaintiff Fails to Show Any of the Cited Studies Is a "Match" to Her Allegations: None Relates to Anything the Product Promised

No matter how Plaintiff picks and chooses from the content of the five studies on which she relies, she cannot show they say anything about the claims on Alpha Brain's label. For that reason, there is a fundamental "mismatch" between Plaintiff's studies and the Product's label claim, which requires dismissal. *See Vigil*

*v. Gen. Nutrition Corp.*, 2015 WL 8056178, at *6 (S.D. Cal. Dec. 4, 2015) (granting motion to dismiss: "When it comes to the plausibility analysis, the essential inquiry depends upon a comparison of the match between the representations at issue and the evidence that allegedly debunks them.").

> 1. *Plaintiff cannot refute Study 1 is irrelevant here because the Product does not promise to improve marksmanship.*

Plaintiff argues Study 1, which measured the impact of Alpha Brain on the marksmanship of U.S. active-duty soldiers, supports her claim here. Opp. at 2-3 (arguing Study 1's "evaluation of 'accuracy and target acquisition time' are directly relevant to disproving . . . [the] Product supports 'focus' and 'cognitive processing speed.'"). She is wrong. The Product does not promise to improve **shooting accuracy** or **target acquisition time**, so Study 1 is plainly irrelevant.

Study 1's authors make this even more clear: "Given research using Alpha Brain demonstrating improved processing speed and memory, we examined whether a nootropic supplement would improve performance of a ***tactically-relevant cognitive task*** such as marksmanship."[1] Study 1, at 2 (emphasis added). The study's stated purpose was thus to see if Alpha Brain had any proven effect (***beyond*** standard cognitive speed and memory) on a "tactically-relevant" task: marksmanship. Further, marksmanship clearly involves far more than focus, e.g., firing position, sight alignment, trigger squeeze, etc. For that reason, Study 1 provides no plausible evidence that Alpha Brain's far more general claim about cognitive processing is false. *See Tubbs v. AdvoCare Int'l, L.P.*, 785 F. App'x 396, 397 (9th Cir. 2019) (finding study on product's effect on athletes' sprinting times irrelevant to product's challenged claims it would "sharpen mental focus" or provide "long lasting energy").

---

[1] Plaintiff attempts to use the fact Study 1 was funded by Onnit to argue it is relevant here. Opp. at 3. This rote speculation is refuted in any event by the study authors' explanation of why they studied marksmanship.

*2. Plaintiff cannot refute that Studies 2, 3, 4, and 5 do not concern the challenged representation or the Product's unique ingredient blend.*

Studies 2, 3, 4, and 5 are irrelevant, no matter how Plaintiff attempts to characterize their findings. **First**, Studies 2 and 3[2] focus on Alzheimer's disease. As Plaintiff admits, Onnit markets its Product as a dietary supplement and *not* a drug intended to treat Alzheimer's or dementia (or any other disease). *See* Opp. at 4 ("Defendant markets its Product as a 'Dietary Supplement' as opposed to a 'drug' intended to treat a disease like Alzheimer's disease."); *see also* Ex. A to RJN (showing Alpha Brain label disclaimer). As courts recognize, there is a clear difference between a product claiming to alleviate symptoms of a particular disease and one claiming to generally improve performance in an area that may be *associated with* that disease. *See, e.g., Eckler*, 2012 WL 5382218, at *7 ("The studies allegedly show that glucosamine doesn't alleviate the symptoms of osteoarthritis in the hip and knee. That is a very particular showing with respect to a degenerative joint disease, and in the Court's judgment it doesn't address the far more general claim—which is made by the Equate representations—that glucosamine is good for the body's joints.").

**Second**, Studies 4 and 5 do not address the representations at issue here. Alpha Brain makes no claims about modulation of inflammatory processes, either in human or rat brains.[3] *See* Study 4. Nor does Alpha Brain claim to improve the

---

[2] Plaintiff conveniently omits that Study 3 shows Huperzine A, another ingredient in Alpha Brain, may support improvement in memory. Study 3, at 5. This is yet a further example of Plaintiff "cherry picking" from studies to support her claims.

[3] Plaintiff claims that "the causal link between inflammation in the brain and brain tissue injury resulting in symptoms such as memory loss is well-known" and cites to a string of highly technical language that does not advance her claims. Opp. at 7-8. The fact that encephalitis *may* cause memory loss says nothing about whether Alpha Brain supports memory given memory loss can have many causes.

video game skills of "elite League of Legends e-sport players."[4] *See* Study 5.

Plaintiff also argues false advertising allegations need not be supported by studies on the actual ingredient**s** in the challenged product. Opp. at 11. This makes no sense. How could a single study about one ingredient provide plausible evidence a product is ineffective when the product contains over ***ten*** other ingredients?[5] Courts have consistently recognized that addressing the overall formulation of the product is critical. *See, e.g., Eckl*er, 2012 WL 5382218, at *6 ("The first problem for [Plaintiff] . . . is that none of these studies actually involved [the Product] . . . it is that overall formulation that's behind the representations at issue."); *Vigil*, 2015 WL 8056178, at *6 ("Thus, the court found that there was a mismatch between GNC's representations and the studies provided by Plaintiff . . . [T]he court noted that 'there are still ten or eleven other ingredients that may support the advertised benefits of Staminol.").

Importantly, Alpha Brain's label makes no specific representations about the effects of phosphatdylserine ("PS") or L-Alpha glycerylphosphorylcholine ("GPC")—the focus of Studies 2 through 5—or any other ingredient individually, but only about the effect of its product as a whole. *Cf. Lytle v. Nutramax*, 2019 WL 8060070, at *5 (C.D. Cal. Sept. 26, 2019) (holding that study concluding that glucosamine/chondroitin supplement does not improve canine joint health supported that product's claims were false because product specifically represented that "it's a glucosamine/chondroitin supplement that really helps maintain healthy

---

[4] As in Study 1, the participants in Study 5 were professionals being tested while engaged in a highly skilled activity (playing video games). Study 5, at 7. The results therefore say nothing about the effect of a substance on the general public's day-to-day cognitive processing.

[5] Plaintiff disputes Alpha Brain contains twelve "active" or "key" ingredients, Opp. at 11, but the Alpha Brain label speaks for itself: it clearly lists multiple proprietary blends ***in addition to*** "Other Ingredients" such as maltodextrin and vegetarian capsule. *See* Ex. A to RJN.

joints"); *McCrary v. Elations Co., LLC*, 2013 WL 6402217, at *5 (C.D. Cal. Apr. 24, 2013) ("Several claims in Elations' advertisements single out the effectiveness [of] glucosamine and chondroitin, therefore Plaintiff can plausibly refute these claims with studies examining these ingredients.").

In any event, even if the Court were to consider studies of just one or two of Alpha Brain's ingredients, Studies 2 through 5 (concerning PS and/or GPC) did not pertain to the label claims at issue here, which say nothing about Alzheimer's disease, inflammation, or video games.

### 3. *Plaintiff presents only inapposite authority and thus fails to dispute she is pursuing an impermissible lack-of-substantiation theory.*

Plaintiff correctly notes that she—not Defendant—has the burden to identify plausible evidence the label statements are false or misleading. Opp. at 12. Here, Plaintiff relies on her exhibits to try to clear that hurdle. She fails.

As set forth above, her studies do not "match" the Product and/or label claims. Plaintiff thus attempts to defeat the Motion by arguing the case involves a disputed issue of fact. Not so. Again, Onnit has no burden to substantiate its claim given Plaintiff's studies provide no specific evidence of falsity as to **this Product**. *See Franz v. Beiersdorf, Inc.*, 2015 WL 4659104, at *3 (S.D. Cal. Aug. 5, 2015) (explaining, after plaintiff brought forth no evidence of falsity as to claims on defendant's lotion product, that "it remains [the plaintiff's] burden to allege facts sufficient to demonstrate [the defendant's] statements are false or misleading, and she can't shift her burden by merely alleging she can't find substantiation"). The Court thus need not "weigh" any evidence or consider "which party's scientific studies are more reliable." Opp. at 12.

Plaintiff also argues it is premature to determine if the studies she cites support her claims, relying on inapposite cases alleging food or drink is mislabeled as "healthy" given it contains added sugar. Opp. at 10. In those cases—unlike here—plaintiffs *did* cite to studies showing direct evidence of falsity, i.e., that if a

product has a certain quantity of sugar, it is not "healthy." *See Krommenhock v. Post Foods, LLC*, 225 F. Supp. 3d 938, 963 (N.D. Cal. 2017) (pointing to evidence that various forms of added sugars create health risks); *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 962, 970 (N.D. Cal. 2022) ("The scientific studies cited by plaintiffs plausibly suggest that the consumption of sugar-sweetened beverages is linked to negative health consequences[.]"); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1059, 1066 (N.D. Cal. 2017) ("Plaintiff provides scientific studies that link added sugar to cardiovascular disease, metabolic syndrome, and diabetes.").

Unlike in the authority she cites, Plaintiff has not met the requirement of presenting relevant studies to overcome a motion to dismiss. *Compare Krommenhock*, 225 F. Supp. 3d at 963 ("***[R]elevant*** studies supporting plaintiffs' theory (at least in part) have been alleged, and determining the full extent of that support is not appropriate on a motion to dismiss.") (emphasis added)); *Quinn v. Walgreen Co.*, 958 F. Supp, 2d 533, 538, 543-44 (S.D.N.Y. 2013) (explaining plaintiffs cited to numerous scientific studies on glucosamine and chondroitin to show that "the 'helps rebuild cartilage' statement [on glucosamine/chondroitin supplement] is affirmatively false because, as a matter of scientific fact, it is impossible to rebuild cartilage"); *Gallagher v. Bayer AG*, 2015 WL 1056480, at *9 (N.D. Cal. Mar. 10, 2015) (finding plaintiffs adequately pleaded falsity of "supports physical energy" statement on multivitamin because scientific evidence confirms that the vitamins do "not affect the energy levels of typical Americans") *with Vigil*, 2015 WL 8056178, at *7 (granting motion to dismiss when plaintiff presented studies regarding only certain ingredients and different representations than the product and label at issue); *McCrary*, 2013 WL 6402217, at *4 (finding complaint failed to establish plausible basis for falsity of claims to improve joint flexibility, comfort, and health because all of plaintiff's cited studies focused on

whether two of the ingredients were effective in treating osteoarthritis, which the supplement did not claim to treat).

Given the contents of Plaintiff's cited studies are not in dispute and the "mismatch" is obvious, now is the proper time to reach this issue. *Vigil*, 2015 WL 8056178, at *7 (granting motion to dismiss after finding mismatch between plaintiff's allegations and advertising claims at issue). Because Plaintiff relies entirely on studies irrelevant to the label claim here, Plaintiff has presented no evidence of falsity at all (plausible or otherwise). She is thus advancing a lack-of-substantiation theory, which is impermissible under well-established California law and requires dismissal. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096-97 (9th Cir. 2017) ("Since California law does not provide a private cause of action for claims that advertising lacks substantiation, the failure to allege specific facts pointing to actual falsehood constitutes a fatal flaw.") (discussing *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms, Inc.*, 107 Cal. App. 4th 1336 (2003)); *Myers v. Starbucks Corp.*, 2020 WL 13302437 (C.D. Cal. July 29, 2020) (dismissing UCL and CLRA claims at the pleading stage given failure to allege "specific facts" to support that label was false or misleading, making them impermissible lack-of-substantiation claims).

### B. Plaintiff Attempts to Rewrite the CLRA but Cannot Escape the Fact She Failed to Comply with Clear Statutory Requirements

*1. Plaintiff's counsel cannot "recycle" CLRA letters.*

Plaintiff concedes she is relying on the Gonzalez CLRA letter (which was the basis of a prior lawsuit and sent on behalf of Geneva Gonzalez), not a letter sent on behalf of Ruth Martin. Opp. at 13. Plaintiff nonetheless maintains it is proper to (1) serve a "placeholder" CLRA letter without naming any specific client and then (2) recycle it in a subsequent lawsuit. *See* Opp. at 13-18. This CLRA notice deficiency, among other failings, renders her demand notice insufficient.

Plaintiff first argues reliance on a different person's CLRA letter is proper because it was sent on behalf of a putative class she would be in. Opp. at 13. This is wrong for two reasons. ***First***, the plain, unambiguous language of the CLRA governs here, which requires that "the consumer" who files a lawsuit (not just ***any*** consumer) sends notice: "Thirty days or more prior to the commencement of an action for damages pursuant to this title, ***the consumer*** shall do the following…" Cal. Civ. Code § 1782(a) (emphasis added); *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40 (1975) ("[I]f the language is clear there can be no room for interpretation, and effect must be given to its plain meaning.").

***Second***, while no caselaw could alter explicit statutory requirements, the cases Plaintiff cites are inapposite in any event. Plaintiff relies heavily on *Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582 (1984), but it concerned a different situation. There, the California Supreme Court considered whether a consumer who notifies a prospective defendant of class grievances under the CLRA and informally obtains relief may then sue and serve as the class representative (the court said yes). *Id.* at 586-87. *Kagan* thus has no bearing on the instant case.

Plaintiff also relies on *Vizcarra v. Unilever U.S., Inc.*, 2020 WL 4016810 (N.D. Cal. July 16, 2020), but that case likewise did not concern a situation where a CLRA letter was sent on behalf of no named "consumer" whatsoever. Further, *Vizcarra* was wrongly decided. Following Plaintiff's (and the *Vizcarra* court's) logic to its natural conclusion, any lawyer could file a lawsuit and point back to *another attorney's* CLRA's pre-demand letter, entirely upending the legislature's statutory pre-suit requirement.

> 2. *Plaintiff cannot skirt the CLRA's plain requirements that subsections be identified and the notice be sent via certified or registered mail.*

Plaintiff concedes she did not comply with the CLRA's "particular alleged violations" or "certified or registered mail" requirements, Opp. at 19-20, but then claims neither statutory requirement needs to be met. She is wrong.

***First***, Plaintiff claims courts have held CLRA subsections need not be identified. Opp. at 19. But the cases she points to say no such thing. *See Lafferty v. Wells Fargo Bank*, 213 Cal. App. 4th 545, 566 (2013) (summarizing CLRA letter without any discussion of whether specific subsections of § 1770 were listed); *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800, at *9 (N.D. Cal. Dec. 28, 2012) (same).[6] Plaintiff also relies on *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), but it likewise did not address the statute's explicit requirement that the notice identify specific CLRA violations. Instead, *Stearns* considered whether the notice must state that class action relief is sought, holding it did not **because the statute does not explicitly require it**. *Id.* at 1023. Here, the Court should enforce the plain language of the statute.

The same is true as to the method of service. Although Plaintiff argues serving by FedEx was proper, she is unable to point to any authority saying she need not comply with the CLRA's unambiguous requirement that the notice "be sent by certified or registered mail, return receipt requested." Cal. Civ. Code § 1782(a)(2).[7]

---

[6] *Colucci* relied on *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007), for the proposition that a CLRA demand letter need only "give . . . sufficient notice of alleged defects to permit appropriate corrections," but the CLRA letter at issue in *Stickrath* **did** specifically cite to subsections of § 1770. *See id.* at 1001-02 (quoting the letter as citing to both §§ 1770(a)(5) and (7)).

[7] Plaintiff's cases do not support her argument. *See Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1111 (N.D. Cal. 2020) (pre-suit notices were sent by FedEx **and** by certified and registered mail); *Jones v. Porsche Cars N. Am., Inc.*, 2015 WL 11995257 (C.D. Cal. Oct. 15, 2015) (no discussion of use of FedEx instead); *Shein v. Canon U.S.A., Inc.*, 2009 WL 3109721 (C.D. Cal. Sept. 22, 2009) (same); *Fidelity Sound System, Inc. v. Am. Bonding Co.*, 85 Cal. App. 3d Supp. 13, 20 (1978) (concerning different statute that also permitted personal service).

### C. Plaintiff Does Not Plausibly Plead Entitlement to Putative Damages

Plaintiff implicitly concedes she failed to plead *specific* allegations of oppression, fraud, or malice, instead arguing "one can *infer* that such wrongdoing was committed by an officer, director, or managing agent as defined in Cal. Civ. Code § 3294(a)." Opp. at 21 (emphasis added). But that is not the standard; allegations for punitive damages must be alleged with *specificity*.[8] *See Grimberg v. United Airlines, Inc.*, 2023 WL 2628708, at *4 (C.D. Cal. Jan. 10, 2023) (finding plaintiffs did not plausibly plead punitive damages claim in part because they "[did] not even specify [which employees] committed the wrongful acts").

### D. The Court Should Dismiss Without Leave to Amend

"While leave to amend should generally be liberally granted, courts have the discretion to deny leave to amend for futility of amendment." *Reed v. Nat'l Football League*, 2015 WL 13344625, at *3 (C.D. Cal. Dec. 18, 2015) (citation omitted), *aff'd*, 683 F. App'x 619 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1610 (2018). The court's discretion to deny leave to amend is particularly broad where, as here, Plaintiff has previously amended the complaint." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (cleaned up). Here, any amendment would be futile. Plaintiff attempted to cure deficiencies identified in the initial Motion to Dismiss, but the Amended Complaint still fell far short. If Plaintiff had evidence the Product did not provide the advertised benefits, she would have put it forth already.

### III. CONCLUSION

For the foregoing reasons, this Court should dismiss the Amended Complaint without leave to further amend.

---

[8] Plaintiff points to paragraph 19 of the Amended Complaint as pleading a basis for punitive damages, Opp. at 21, but it plainly does not meet the above standard. For example, no individual employees are named, and there are otherwise no specific (or even conclusory) allegations of oppression, fraud, or malice.

Dated: August 24, 2023

Respectfully submitted,

DTO LAW

By: */s/ Megan O'Neill*
 Megan O'Neill

Attorney for Defendant
ONNIT LABS, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Onnit Labs, Inc., certifies that this Memorandum does not exceed 10 pages and contains 3,325 words, in compliance with the page limit of Rule VIII(c) of the Civil Standing Order (ECF No. 12) and the word limit of Local Rule 11-6.1.

Dated:  August 24, 2023                         */s/ Megan O'Neill*
                                                                     Megan O'Neill